**THE UNITED STATES COURT OF FEDERAL CLAIMS**

**JANE DOE,**

**Plaintiff,**

**vs.**

**UNITED STATES OF AMERICA,**

**Defendant.**

Case No. 24-1349 C

**PLAINTIFF'S MOTION FOR LEAVE TO PROCEED UNDER PSEUDONYM**

Plaintiff respectfully moves this Court to permit Plaintiff to proceed under pseudonym pursuant to Rule 10(a) of the Rules of the United States Court of Federal Claims ("RCFC") and Rule 10(a) of the Federal Rules of Civil Procedure.

**INTRODUCTION**

The Court should grant Plaintiff leave to pursue her claims against the United States under the pseudonym "Jane Doe" to protect her privacy and to protect her from further psychological injury and public embarrassment. Plaintiff, a former service member with the United States Department of the Air Force ("Air Force"), has been diagnosed multiple times as suffering from Post-Traumatic Stress Disorder ("PTSD") related to at least two separate incidents. The first was a violent rape that occurred in a foreign country when Ms. Doe was seventeen years old. The second was an assault by a male active duty Air Force service member that has been classified as a Military Sexual Trauma ("MST") event that occurred while Plaintiff was on active duty. She seeks relief from this Court for the unlawful denial of disability retirement or disability separation pay and benefits and for correction of military records that the Air Force unlawfully denied her.

Simply put, there is absolutely no public interest in the government revealing Plaintiff's proper name while she seeks a legal remedy from this Court. To state the obvious, a rape victim

who was a minor at the time of the assault should be protected from public disclosure of her name when she seeks relief for subsequent trauma in the military that exacerbated that sexual trauma. These special circumstances demonstrate the need to protect Plaintiff's privacy and shield her from further trauma and public embarrassment. Accordingly, the Court should allow Plaintiff to file her Complaint under pseudonym.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiff has been diagnosed multiple times as suffering from PTSD related to at least two separate incidents: (1) a violent rape that occurred when she was seventeen years old; and (2) an assault by a male fellow Air Force service member on active duty in 2013 which occurred while Plaintiff herself was also on active duty that subsequently was classified as MST.

The PTSD diagnoses were made during Plaintiff's active duty service by physicians affiliated with the Air Force at Walter Reed National Military Medical Center, as well as by the United States Department of Veterans Affairs ("VA") after her discharge. During Plaintiff's VA evaluation, the VA further determined that the 2013 assault that she endured while on active duty was, in fact, MST.

Plaintiff enlisted in the Air Force at age nineteen to serve her country, provide for her family, and obtain the financial means to realize her dream of becoming a medical doctor. Plaintiff served on active duty from August 24, 2010 until January 14, 2016 when, at the rank of Staff Sergeant (E-5), she was separated with an Honorable Discharge, eight months before the end of her six-year enlistment. Prior to her discharge, Plaintiff successfully completed military training

[1] The facts stated herein, unless noted otherwise, are based upon the Verified Complaint filed contemporaneously herewith.

and received awards for being the top Airman in her facility where she was placed in charge of training thirty incoming and existing personnel. Further, Plaintiff received additional awards including the AF Good Conduct Medal, AF Longevity Service Ribbon, USAF NCO PME Graduate Ribbon, AF Training Ribbon, Meritorious Unit Award, AF Outstanding Unit Award, National Defense Service Medal and Global War on Terrorism Service Medal.

Despite this decorated career, at every stage of the process that resulted in Plaintiff's removal from the Air Force, she has been subjected to further trauma as the result of mischaracterization of the facts relating to her traumatic experiences not only by the Air Force personnel who handled her discharge, but also by the Air Force Board for the Correction of Military Records and the personnel whom the Board solicited for medical and mental health advisory opinions. For example, the Air Force has repeatedly dismissed the 2013 attack she endured (classified by the VA as an MST) as a "boyfriend '[p]utting his hands on her'" and "Adult Physical Abuse." In reality, in the 2013 attack, the assailant struck Plaintiff, pushed her against a building wall, threw her to the ground on her back, and then dragged her across the gravel parking lot. Only with the help of a fellow Airman, who witnessed the incident, was Plaintiff able to disengage from the initial assault. Further, later that same night, Plaintiff awoke to find the assailant in her hotel room pinning her down in her bed. Plaintiff was terrified that the assailant was going to kill her. In addition to the physical injuries she sustained, the assault also brought back horrific memories of her previous rape resulting in anxiety attacks and depression. After reporting the violent assault to her Air Force command and despite a non-contact order issued against the male Airman assailant, the assailant continued to live in the same dormitory where he harassed and threatened her with violence for having reported him. The fact that the Airman who assaulted Plaintiff continued to stalk her in the aftermath of the assault clearly constitutes sexual

harassment. Thus, the actions of the Air Force with respect to Plaintiff have already caused her further traumatization, not only by forcing her to relive these experiences, but also by actively trivializing Plaintiff's experiences.

Throughout the process relating to Plaintiff's treatment, diagnoses, and her improper removal from active service, the evaluators and/or advisors responsible for reviewing and providing guidance regarding her status repeatedly provided feedback that was not factually correct. For example, Plaintiff was administratively separated without the protection of the Integrated Disability Evaluation System ("IDES") process that would generally include a Medical Evaluation Board ("MEB"). This was due to the incomplete set of facts considered by the Evaluator during the Command Directed Evaluation ("CDE") that led to a determination that Plaintiff was unsuitable for duty based on a civilian hospital's diagnosis that was devoid of supporting documentation. Further, the CDE Evaluator did not even review the records for Plaintiff that included her PTSD diagnoses despite the fact that the records had been collected in advance of the evaluation.

Adding insult to injury, the CDE Evaluator trivialized the impact of Plaintiff's rape and the violent 2013 assault in her review, characterizing the rape as mere "sexual assault" and describing the 2013 assault, that was later classified as an MST by the VA, as merely a "boyfriend '[p]utting his hands on her.'" Finally, the CDE evaluator ignored Plaintiff's in-service PTSD diagnosis as well as physical conditions such as fibromyalgia and migraines. Thus, despite clear-cut evidence of unfitness on mental health and physical grounds, the Air Force completely avoided the IDES and MEB processes. The action by the Air Force here – seizing upon an unsuitable condition (personality disorder) in order to quickly discharge an Airman without going through the process of evaluating the Airman for unfitting conditions (PTSD, fibromyalgia, migraines) for disability

retirement or separation – resulted in a denial of Plaintiff's rights and further resulted in an inappropriate listing of "personality disorder" on her Form DD-214.

On May 21, 2021, Plaintiff filed her Form DD-149, "Application for Correction of Military Record," with the Air Force Board for the Correction of Military Records ("AFBCMR") or ("Board") seeking review of her January 14, 2016 discharge on the grounds that she was improperly denied review by IDES and therefore the Air Force improperly denied her the benefits of disability retirement and/or disability separation. Based on the diagnoses contained in the mental health and medical records of both the Air Force and the VA, as well as the VA ratings decisions pursuant to which the VA determined that Plaintiff has service-connected static disabilities collectively rated at 100% as of the date of her discharge, Plaintiff contended that the Board should correct her military record to reflect either that she receives disability retirement or disability separation as of January 14, 2016. Plaintiff argued that such relief was warranted because the record left no question that she had mental health and medical conditions that rendered her unfit for military service. Plaintiff also sought correction of her DD-214 narrative reason for discharge to remove the stigmatizing "personality disorder" designation.

In connection with her application to the Board, Plaintiff submitted a brief and four sets of comments on the various advisories obtained by the Board; nearly 2,500 pages of mental health records, medical records and other exhibits; three declarations Plaintiff made under penalty of perjury; and the opinion of the VA psychiatrist, Dr. Elizabeth Greene, who treated Plaintiff for service-connected PTSD for four years after her discharge.

The Board obtained a psychological advisory as well as three medical advisories on Plaintiff's case. The psychological advisory and all three medical advisories were replete with legal and factual errors and misrepresentations of the record. The psychological advisory was

anonymous and disclosed neither the name, the position nor the credentials of the advisor. As a result of the unexplained anonymity, there was no evidence that the psychological advisory complied with statutory requirements, namely, that it be by "a clinical psychologist or psychiatrist," 10 U.S.C. § 1552(g)(1), and that it be by "a psychiatrist, psychologist or social worker" with expertise in PTSD and sexual trauma or intimate partner violence. *Id.* § 1552(g)(2)-(g)(3). The anonymous psychological advisor's multiple failures to consider relevant evidence, multiple false statements of fact and other flaws and errors were all presented in Plaintiff's comments to the Board. The anonymous psychological advisor never even responded to, let alone made any attempt to rebut, any of these arguments. In addition, the Board obtained three medical advisories on Plaintiff's case that it made available on December 21, 2021, August 29, 2022 and November 29, 2022, respectively. All three medical advisories were replete with legal and factual errors and misrepresentations of the record.

On December 8, 2023, the Board provided less than a page of analysis consisting of a high-altitude collection of conclusory, unexplained statements. The Board ruled that the narrative reason for Plaintiff's discharge should be changed from "personality disorder" to "Condition Not a Disability." The Board denied Plaintiff's claims for disability retirement and, in the alternative, for disability separation. The Board's cryptic decision appeared to do nothing more than rubber-stamp the erroneous conclusions of the psychological advisory and the medical advisories. While the decision contained the usual boilerplate statement that the Board had reviewed all of the submissions, the Board addressed none of Plaintiff's arguments and none of the evidence that she had submitted. The Board likewise failed to address any of the numerous legal errors, false statements of fact, unsupported conclusions and other mistakes and flaws that Plaintiff had pointed out in the psychological advisory and the three medical advisories.

As result of the rape when she was a teenager and the violent physical assault by a fellow Airman, along with the symptoms, emotions and behaviors that flowed from these events, Plaintiff has been diagnosed multiple times as suffering from PTSD. The rape and 2013 violent assault meant that Plaintiff suffered from a complex mental health history while she was in the Air Force. The VA determined that Plaintiff's PTSD was aggravated by the 2013 assault. Plaintiff experienced a variety of symptoms from and after the rape and throughout her military service including, depression, anxiety, mood swings, panic attacks, intrusive thoughts of prior traumatic events, inability to trust and withdrawing from others, loneliness, auditory and visual hallucinations, sleep disturbances and somatic symptoms such as racing heart rate.

As a seventeen-year old rape victim in a foreign country where she did not speak the language, Plaintiff had no access to mental health treatment. The PTSD that resulted from that rape therefore went undiagnosed and was not noted upon her entry into the Air Force in 2010. However, the psychological vulnerability that stemmed from the rape existed nonetheless and began to manifest itself during Plaintiff's first duty station assignment after basic training. When compounded with the violent 2013 assault, Plaintiff's continued harassment at the hands of the assailant in her home (i.e., dormitory), and the response of Air Force representatives who minimized her traumatic experiences, resulted in further trauma to Plaintiff, justifying her request for leave to proceed before this Court under the pseudonym Jane Doe.

## ARGUMENT

RCFC 10(a) requires that "[t]he title of the complaint must name all the parties ... with the United States designated as the party defendant" and all subsequent pleadings must name at least the first plaintiff. *Id.* However, the Court has discretion to seal information from disclosure if the public's right of access is outweighed by sufficient competing interests. *Black v. United States*, 24 Cl. Ct. 461, 464 (1991). One such competing interest allowing a plaintiff to proceed

anonymously arises "'when special circumstances justify secrecy,' such as when necessary 'to protect a person from harassment, injury, ridicule or personal embarrassment.'" *Doe No. 1 v. United States*, 143 Fed. Cl. 238,240 (2019) (quoting *Does I Thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067 (9th Cir. 2000)). "In such cases, 'the plaintiff's interest in anonymity must be balanced against both the public interest in disclosure and any prejudice to the defendant.'" *Id.* (quoting *Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 189 (2d Cir. 2008)).

This Court has applied the five-factor test set forth in *Advanced Textile* to decide whether a plaintiff may proceed anonymously. *Doe v. United States,* No. 19-720T, 2019 WL 3406800, at *2 (Fed. Cl. July 29, 2019). This balancing test applies the following factors: (1) the severity of the threatened harm to the party; (2) the reasonableness of the party's fears; (3) the party's vulnerability to potential harm; (4) the public interest; and (5) any prejudice to the opposing party at each stage of the proceedings. *Id.*; *see also Advanced Textile*, 214 F.3d at 1067-68.

Under these principles and the circumstances present here, Plaintiff has a strong privacy interest in bringing her claims anonymously and she will suffer additional psychological injury and public embarrassment if not allowed to do so. Accordingly, the Court should grant Plaintiff's Motion.

## I. <u>The Severity Of The Harm To Plaintiff Is Substantial And Justifies Granting Leave To Proceed Under Pseudonym</u>

"In assessing the weight of a plaintiff's privacy interest in proceeding anonymously, courts generally conclude that a threat of physical or psychological harm is sufficiently severe." *Doe No. 1*, 143 Fed. Cl. at 240-41 (citation omitted). Courts have found that rape victims like Plaintiff are "particularly vulnerable" and have allowed them to proceed anonymously. *See Boggs v. United States*, 143 Fed. Cl. 508, 514 (2019) (citing *Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869, 872 (7th Cir. 1997). *See also Randolph v. United States*, No. 2017-1477 (Fed. Cir. June

13, 2017) (referring to rape victim mentioned in *per curiam* opinion as "Recruit" and not by her name) (attached hereto as Exhibit 1.)

As outlined in the Complaint at Paragraphs 9 through 10, Plaintiff was the victim of a violent assault at the hands of a fellow Airman. The assailant was never prosecuted, despite the fact there was a witness to the assault. The lack of concern from law enforcement regarding the assault (Complaint ¶ 10), the callous disregard of Plaintiff's PTSD diagnosis by CDE (*id.* ¶¶ 40-44), the Air Force's wrongful separation activities with respect to PTSD (*id.* ¶ 45), and continued wrongdoing of the AFBCMR with respect to Plaintiff's case (*id.* ¶¶ 62-77) have left Plaintiff with substantial psychological harm.

Because Plaintiff's Complaint in this matter provides significant *prima facie* evidence of repeated disregard of the evidence of her trauma, a subsequent PTSD diagnosis and a determination that she suffers from MST, a reasonable person would conclude that the Air Force will continue to ignore the evidence of all this since it has done so even after Plaintiff's involuntary discharge. Moreover, if required to pursue her claims under her proper name, Plaintiff would suffer additional trauma. And because Plaintiff works in the medical field, public disclosure of her mental health condition, though perhaps not impacting her ability to practice, would nonetheless be likely to cause irreparable harm to her reputation.

Accordingly, the first factor weighs heavily in Plaintiff's favor.

## II. Plaintiff's Fears Are Reasonable In Light Of Defendant's Repeated Disregard of Plaintiff's Trauma and Medical Diagnosis

The procedural history of Plaintiff's case outlined *supra* makes clear that her concern she will suffer further psychological harm if required to file suit under her proper name is entirely reasonable. The Federal Circuit has said that "[the] threat [to a party seeking to file anonymously] cannot be 'speculative' or 'unsubstantiated.'" *Doe No. 1*, 143 Fed. Cl. at 241 (quoting *Doe v. Pub.*

*Citizen*, 749 F.3d 246, 274 (4th Cir. 2014)). "A reasonable person must believe that the risk of harm could materialize." *Id.* (citing *Advanced Textile*, 214 F.3d at 1071).

There is no question that Plaintiff's Complaint provides such substantial evidence necessary to satisfy this factor. It outlines significant factual support for the conclusion that the Air Force repeatedly disregarded the evidence relating to her trauma and PTSD diagnosis. (*See, e.g.*, Complaint ¶¶ 8-10; 12-15; 40-44.) Therefore, a reasonable person would conclude that the Air Force is likely to continue to ignore the evidence of both trauma and multiple diagnoses of PTSD and MST, since it has done so even after Plaintiff's involuntary discharge. As a result, Plaintiff's well-being is decidedly at risk if Defendant opposes Plaintiff's motion to proceed under a pseudonym and proceeds to litigate against her claims openly and on the public docket.

Accordingly, the second factor also weighs in Plaintiff's favor.

## III. Plaintiff Is Particularly Vulnerable To Potential Harm

The Government has unlimited resources and, as compared to Plaintiff, has much more power. Plaintiff has demonstrated through her Complaint the special circumstances permitting the Court to maintain anonymity. Paragraphs 8 through 10 of the Complaint alone reveal the sort of humiliating details that would compel the Court to maintain anonymity, namely, that she is the alleged victim of a grievous and outrageous rape prior to her military service while a minor, and a violent assault during her military service. Further, Plaintiff, as outlined in Paragraphs 12 through 15 of the Complaint, has been diagnosed with PTSD related to the pre-military rape as well as the physical assault in the Air Force, which has been classified as an instance of MST. Public disclosure of her name in these proceedings would do nothing except to cause her additional trauma.

Plaintiff's need and interest in preserving her anonymity is clear from details contained in the Complaint and there is no public interest in knowing the Plaintiff's identity considering the

personal details contained in the Complaint. Plaintiff need not be victimized further while pursuing a remedy for the harm inflicted upon her as a result of her wrongful separation.

For these reasons, the third factor also weighs in Plaintiff's favor.

## IV. The Public Interest Is Not At Risk If Plaintiff Proceeds Under A Pseudonym

Shielding Plaintiff's identity from public view will not harm the public interest in the least. While the public does have an interest in ensuring that veterans who are entitled to benefits provided to them under law actually receive them, there is no public interest in knowing the name of this particular individual seeking such benefits. "Generally, a plaintiffs 'use of [a] fictitious name[ ] runs afoul of the public's common law right of access to judicial proceedings."' *Doe No. 1*, 143 Fed. Cl. at 242 (quoting *Advanced Textile*, 214 F.3d at 1067 (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598-99, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978))). "However, the public interest in knowing a plaintiffs name is weaker where anonymity does not obstruct the public's view of the issues." *Id.* (citing *Advanced Textile* at 1068-69, 1072 (citation omitted)).

Here, anonymity does not obstruct the public's view of the issues because Plaintiff's Complaint is replete with specific information about her treatment by the Board in evaluating her eligibility for benefits to which she is entitled. Public access to *that* information – and certainly not Plaintiff's proper name – is what ensures accountability that laws passed by Congress to provide for veterans are enforced. No additional public benefit would accrue from disclosing Plaintiff's identity.

Accordingly, the public interest factor does not weigh against Plaintiff's motion.

## V. The United States Is Not Prejudiced By Allowing Plaintiff To Proceed Under A Pseudonym

The final factor – prejudice to the parties – does not favor Defendant either. This Court has explained that:

> In assessing prejudice to a defendant, courts examine a variety of factors, such as whether a jury would view an anonymous plaintiff differently, *see Doe v. Delta Airlines, Inc.*, 310 F.R.D. 222, 225 (S.D.N.Y. 2015), *aff'd*, 672 F. App'x 48 (2d Cir. 2016); whether anonymity would deprive the defendant of potential witnesses, *see id.*; whether the defendant knows the plaintiff's true identity, *see Doe v. United States*, 210 F. Supp. 3d 1169, 1173 (W.D. Mo. 2016); and whether anonymity would impact discovery, *see Doe No. 2 v. Kolko*, 242 F.R.D. 193, 198 (E.D.N.Y. 2006), among other things.

*Doe No. 1*, 143 Fed. Cl. at 241. Courts are less likely to deny motions to file anonymously when the Defendant is a governmental entity as the risk of reputational or economic harm is not a consideration. *Candidate No. 452207 v. CFA Inst.,* 42 F. Supp. 3d 804, 810 (E.D. Va. 2012).

Here, there will be no jury trial and likely no discovery because cases of this nature – review of the decision of a military records correction board – are usually decided on cross-motions for judgment on the administrative record. *See, e.g., Keltner v. United States*, 165 Fed. Cl. 484 (2023). Furthermore, Defendant will not be prejudiced by allowing Plaintiff to remain anonymous because under Plaintiff's motion, the government will not be denied information about her identity. Rather, it will only be shielded from disclosure to the general public. This court has determined in similar circumstances that there is no prejudice to the government when the government knows the identity of a litigant seeking to proceed in claims against it anonymously. *See Boggs,* 143 Fed. Cl. at 512 (finding no prejudice to the defendant United States because "the government knows the names and addresses of the [plaintiffs]. The pending motion would only inhibit public disclosure."); *cf. Roe v. Aware Woman Ctr. for Choice*, 253 F.3d 678, 687 (11th Cir. 2001) (affirming entry of protective order allowing anonymity in civil suit where the plaintiff's name was provided to defendants on the condition that they not disclose it to the general public). Plaintiff here is willing to cooperate with Defendant in court submissions that require use of her proper name, provided that Defendant provides assurances to Plaintiff that it will not disclose her name broadly to the public. This properly addresses any concerns Defendant could have about any

alleged prejudice resulting from Plaintiff proceeding under pseudonym. As the United States Court of Appeals for the Eleventh Circuit explained:

> The only justification the defendants offer for stripping Roe of her privacy is the argument that they will not be able to adequately conduct discovery without knowing her true identity. However, that argument is eviscerated by Roe's offer to disclose her name to the defendants for discovery purposes on condition that they do not disclose it to the general public. That is a reasonable way to reconcile the competing interests, and the district court can enter an appropriate protective order.

*Id.*

By contrast, requiring Plaintiff to proceed under her proper name would cause her prejudice because of the public embarrassment that would result from the revelation of highly sensitive personal information about Plaintiff's medical diagnoses and history of sexual assault. *See Boggs*, 143 Fed. Cl. at 513 (public embarrassment cited as example of harm that can constitute prejudice justifying anonymity in litigating federal claims). Therefore, balancing the relative harms to the parties reveals that the prejudice factor also weighs in favor of granting Plaintiff's motion.

**RULE 7.3 CERTIFICATION**

Because the instant motion has been filed simultaneously with the commencement of this action, it was not possible for counsel for Plaintiff to confer with opposing counsel, pursuant to RCFC 7.3(a), to determine whether the instant motion is opposed because opposing counsel, at this point, is unknown to Plaintiff's counsel.

**CONCLUSION**

For all of the foregoing reasons, Plaintiff respectfully moves this Court to grant Plaintiff's Motion For Leave To Proceed Under Pseudonym.

Dated: August 29, 2024

Respectfully submitted,

John M. Simpson
jmsimpson@duanemorris.com
Rebecca S. Bjork
rsbjork@duanemorris.com
Heidi S. E. Lunasin
helunasin@duanemorris.com
Duane Morris LLP
901 New York Avenue NW
Suite 700 East
Washington, D.C. 20001-4795
Telephone: +1 202 776 7800
Fax: +1 202 776 7801

Counsel for Plaintiff